IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JUAN SOLANO, :

    Petitioner,

v. : Case Nos. 3:08-cr-154(1), 3:11-cv-112

UNITED STATES OF AMERICA, : JUDGE WALTER H. RICE

    Respondent. :

---

DECISION AND ENTRY VACATING NOVEMBER 20, 2015, DECISION AND ENTRY ADOPTING UNITED STATES CHIEF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS (DOC. #156); SUSTAINING IN PART AND OVERRULING IN PART PETITIONER'S OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATIONS (DOC. #158); ADOPTING IN PART AND REJECTING IN PART UNITED STATES CHIEF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS (DOC. #155); SUSTAINING UNITED STATES' MOTION TO DISMISS (DOC. #116); OVERRULING PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 (DOC. #108) AND DISMISSING IT WITH PREJUDICE; JUDGMENT TO ENTER IN FAVOR OF RESPONDENT AND AGAINST PETITIONER; DENYING ANTICIPATED REQUEST FOR CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*; TERMINATION ENTRY

---

Petitioner Juan Solano was born in the Dominican Republic, but has lived almost all of his life in the United States. After pleading guilty to conspiracy to distribute and possess with intent to distribute heroin, he was sentenced to 120 months in prison. Judgment was entered on July 17, 2009. Doc. #82.

On April 6, 2011, Petitioner filed a Motion to Vacate Under 28 U.S.C. § 2255, Doc. #108, alleging that he was denied his Sixth Amendment right to effective assistance of counsel when his attorney gave him faulty advice about the collateral consequences of his guilty plea—more specifically, the risk of deportation. Respondent United States filed a Motion to Dismiss, Doc. #116. The Court sustained Respondent's Motion and overruled Petitioner's Motion to Vacate. Docs. ##124, 125.

However, on Petitioner's Motion for Reconsideration,[1] Doc. #127, the Court reopened the case, and directed Magistrate Judge Ovington to appoint counsel and hold an evidentiary hearing on the question of whether the Motion to Vacate was timely filed, and on the merits of the ineffective assistance of counsel claim. Doc. #129.

Magistrate Judge Ovington then issued a very thorough 26-page Report and Recommendations on November 2, 2015. Doc. #155. After concluding that Petitioner's Motion to Vacate was not timely filed, and that his ineffective assistance of counsel claim lacked merit, she recommended that the Court sustain Respondent's Motion to Dismiss, and overrule Petitioner's Motion to Vacate. She also recommended that the Court decline to issue a certificate of appealability and leave to appeal *in forma pauperis*.

---

[1] Inexplicably, final judgment was not entered on either the criminal or civil case; accordingly, the Petitioner's filing of a Motion for Reconsideration was the proper vehicle to bring his issues before this Court.

2

Petitioner failed to file any objections to the Report and Recommendations. Therefore, on November 20, 2015, the Court adopted said judicial filing, sustained Respondent's Motion to Dismiss, overruled Petitioner's Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255, and dismissed it with prejudice.  Doc. #156.

Counsel for Petitioner subsequently filed a Motion for Reconsideration, Doc. #157, conceding that he had missed the deadline for filing objections to the Report and Recommendations, but asking for the opportunity to be heard.  By notation order, the Court granted him leave to file objections no later than December 21, 2015, and he did so.  Doc. #158.  Accordingly, the Court now VACATES the November 20, 2015, Decision and Entry, Doc. #156, in order to consider those Objections.

Under Rule 8 of the Rules Governing Section 2255 Proceedings, the district judge must review *de novo* any proposed finding or recommendation of a magistrate judge to which an objection is made.  The court may accept, reject, or modify said recommendations.

I. **Merits of Ineffective Assistance of Counsel Claim**

Petitioner first objects to Magistrate Judge Ovington's conclusion that the ineffective assistance of counsel claim lacks merit.  As Magistrate Judge Ovington explained, in order to prevail, Petitioner must show that his attorney's performance was deficient, and that there is a reasonable probability that, but for his counsel's

3

errors, he would not have pled guilty.  *See Strickland v. Washington*, 466 U.S. 668 (1984).

At the evidentiary hearing, Petitioner testified that he was born in the Dominican Republic, but moved to the United States when he was seven years old. When he was thirteen, his mother became a naturalized citizen.  Doc. #143, PageID#777.  His mother told him that, because she was naturalized, he had derivative United States citizenship.  *Id.* at PageID#778.

Petitioner further testified that, when he was considering whether to sign a plea agreement, he discussed his citizenship with his attorney, Aaron Durden, who told him not to worry about the risk of deportation because, given that Petitioner's mother had been granted United States citizenship when he was a minor, Petitioner was also deemed to be a United States citizen.  *Id.* at PageID##784-85.

Durden, however, denied making any such statement.  He researched the issue because it appeared that Petitioner's citizenship status had been one of the reasons why he was denied bond after he was arrested in New York.  *Id.* at PageID#841-42.  Durden, who was admittedly not well versed in immigration law, called an immigration attorney, who confirmed his belief that Petitioner was not a United States citizen.[2]  *Id.* at PageID##858-60.  Durden testified that, although he communicated this to Petitioner, Petitioner continued to insist otherwise.  *Id.* at PageID#845.  In preparing for the plea hearing, Durden specifically warned

---

[2]  At the evidentiary hearing, Petitioner testified that he now understands that derivative citizenship was not available to him unless *both* of his parents were naturalized when he was still a minor.  Doc. #143, PageID##802-03.

4

Petitioner that, if he were *not* a United States citizen, he faced a risk of deportation. *Id.* at PageID#846.

In her Report and Recommendations, Magistrate Judge Ovington explained all of the reasons why she found Durden's testimony, concerning the advice given prior to the plea hearing, to be more credible than Petitioner's. Doc. #155, PageID##1099-1102. Because she had the opportunity to observe the witnesses, the Court gives a great deal of weight to her credibility determination, and finds that Durden did not affirmatively mislead Petitioner concerning his citizenship.

What happened *during the plea hearing* itself is of greater concern. During the plea colloquy, when the undersigned asked Petitioner if he was a United States citizen, Petitioner responded, "I believe so, sir, yes." The undersigned stated, "I ask only because if you were not you would be facing deportation, do you understand?" Petitioner answered, "Yes, sir." Doc. #121, PageID#537.

At the evidentiary hearing, Durden admitted that he probably should have interrupted at that point in the proceedings to inform the Court that he and his client had differing views on the question of citizenship. However, he said nothing. Durden explained that he remained silent because he did not want to argue with his client in open court. He further testified that, once the undersigned specifically cautioned Petitioner that he would face deportation if he were not a United States citizen, he felt no need to interject. Doc. #143, PageID##868-70.

Magistrate Judge Ovington stated that, at first glance, it was a close question as to whether Durden's representation was "reasonable considering all

5

the circumstances." Doc. #155, PageID#1102 (quoting *Strickland*, 466 U.S. at 688). She concluded, however, that, in light of the strong presumption that Durden's performance fell "within the wide range of reasonable professional assistance," his decision not to intercede in the plea hearing was not constitutionally deficient, particularly given the Court's cautionary statement about deportation, which was entirely consistent with what Durden had already told his client. *Id.* at PageID#1103 (quoting *Strickland*, 466 U.S. at 689).

Given her factual finding that Durden did not give Petitioner bad advice about his citizenship or the risk of deportation, Magistrate Judge Ovington further found that Petitioner could not establish the requisite prejudice. She concluded that he had knowingly and voluntarily pled guilty, despite the known risk of deportation. *Id.*

Petitioner objects to the Magistrate Judge's conclusions on both prongs of the *Strickland* analysis. Durden knew that Petitioner fervently believed that he was a United States citizen and would not be deported. Petitioner argues that Durden therefore had a duty to "bring to the court's attention what counsel knew to be his client's insistent, yet mistaken belief." Doc. #158, PageID#1121. He further argues that Durden's failure to do so violated his Sixth Amendment right to effective assistance of counsel.

In addition, Petitioner argues that he was prejudiced by his counsel's error, because he would not have pled guilty had he known that he would face deportation. At the evidentiary hearing, he acknowledged that, had he decided to

6

go to trial and been convicted, he would have been in the same position.  Doc. #143, PageID#826.  However, he explained that, because he wanted to see his family, the risk of deportation concerned him more than jail time.  He would rather serve a longer prison sentence in this country than serve a shorter sentence followed by immediate deportation.  *Id.* at PageID#834.

The Court SUSTAINS Petitioner's Objections with respect to both prongs of the *Strickland* analysis.  The Court accepts Magistrate Judge Ovington's factual finding that, prior to the plea hearing, Durden told Petitioner that he did not believe that he was a United States citizen, and that, as a result, he could be subject to deportation.  As noted earlier, the Magistrate Judge was able to observe these witnesses to determine their credibility.

But, regardless of what Durden told his client *prior* to the plea hearing, it is undisputed that, at the time he pled guilty, Petitioner continued to believe that he was, in fact, a United States citizen.  It is also undisputed that Durden knew of his client's mistaken belief.  *Id.* at PageID##845, 847.  Petitioner claims that the pretrial services report, which Durden reviewed with him prior to the plea hearing, actually reinforced his belief that he was a United States citizen, because it states: "Citizenship:  USA (permanent resident)."  Although that same report also states that he "may" be amenable to removal proceedings for violations of the immigration act, Petitioner testified that, because he was a United States citizen, he did not believe that statement pertained to him.  *Id.* at PageID##815-16.

7

At the plea hearing, Durden failed to inform the Court that he and Petitioner had differing views on this topic. By not interrupting the plea colloquy, he led the Court to believe that he agreed with his client's statement that he was, in fact, a United States citizen. Durden maintains that the Court's warning—that if his client was not a United States citizen, he faced a risk of deportation—negated any need to interrupt, because this was consistent with he had told his client all along. However, given his client's adamant belief that he *was* a United States citizen, Durden should have realized that the Court's warning would have absolutely no impact on Petitioner's decision to move forward with his guilty plea. Durden therefore owed a duty to his client, and to the Court, to bring this matter to the Court's attention.

Judicial review of counsel's performance under *Strickland* is "highly deferential." As Magistrate Judge Ovington noted, the relevant inquiry is whether it was "reasonable considering all the circumstances . . . viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 688-90. The Court finds that Durden's failure to interrupt the plea colloquy, to inform the Court that, in his professional opinion, his client was *not* a United States citizen, fell "outside the wide range of professionally competent assistance," *id.* at 690, and was constitutionally deficient. This was a matter of candor. By allowing the plea colloquy to move forward without interruption, Durden deprived the Court of the opportunity to probe further into the question of Petitioner's citizenship, and, as

explained below, deprived his client of the opportunity to reconsider his decision to plead guilty.

This brings us to the prejudice prong of the *Strickland* inquiry. In order to establish prejudice, Petitioner "must show that there is a reasonable probability that, but for [his] counsel's errors, he would not have plead[ed] guilty and would have insisted on going to trial." *Hill v. Lockhard*, 474 U.S. 52, 59 (1985). Magistrate Judge Ovington found that there was no prejudice because Durden had told Petitioner that he was not United States citizen and that he faced a risk of deportation. Petitioner chose to believe otherwise, and pled guilty anyway. She therefore concluded that his plea was knowing and voluntary.

The relevant conduct at issue, however, is Durden's failure to interrupt the hearing to inform the Court that, in his opinion, his client was not a United States citizen. What Magistrate Judge Ovington failed to consider is what the *Court* would have done differently had Durden disclosed this fact during the plea hearing, and how that might have affected Petitioner's decision to plead guilty.

Had the matter been brought to the Court's attention, the Court would not have accepted Petitioner's guilty plea without first resolving the question of his citizenship. It would have aborted the hearing. Once it was conclusively determined that Petitioner was not a United States citizen, the Court would have engaged in an extended colloquy to make certain that Petitioner understood that this meant that he would very likely be deported at the conclusion of his jail sentence.

As noted earlier, Petitioner testified that the risk of deportation was his biggest concern. Rather than plead guilty, serve a shorter sentence, and then be immediately deported, he would have taken the risk of going to trial. Even if this meant that he might face a significantly longer prison term, at least he would remain close to his family. Doc. #143, PageID#834. Based on this testimony, the Court finds that, but for Durden's failure to interrupt the plea colloquy to bring the matter to the Court's attention, there is a reasonable probability that Petitioner would not have pled guilty, but would have chosen to go to trial.

For these reasons, the Court SUSTAINS Petitioner's Objections to the Magistrate Judge's Report and Recommendation concerning the merits of his ineffective assistance of counsel claim.[3] However, this does not necessarily mean that Petitioner is entitled to the relief he seeks.

## II.    Timeliness of Motion to Vacate

Petitioner also objects to Magistrate Judge Ovington's finding that the Motion to Vacate was untimely filed. As she noted, 28 U.S.C. § 2255(f) provides, in relevant part, that a motion to vacate must be filed within one year after "the date on which the judgment of conviction becomes final," 28 U.S.C. § 2255(f)(1), or "the date on which the facts supporting the claim or claims presented could

---

[3]  Aaron Durden is an excellent attorney, who always represents his clients vigorously and effectively. This case, save for the one specific issue discussed above, represents no exception.

10

have been discovered through the exercise of due diligence," 28 U.S.C. § 2255(f)(4).

Judgment was entered on July 17, 2009. Petitioner had ten days to file a Notice of Appeal. His conviction therefore became final on July 27, 2009.[4] He did not file his motion until April 6, 2011. Petitioner maintains that, prior to April 23, 2010, when he received a copy of the immigration detainer informing him that an investigation was being initiated to determine whether he was subject to removal from the United States, he had no reason to suspect that he was subject to deportation.

Magistrate Judge Ovington, however, found that the clock started running no later than the July 14, 2009, sentencing hearing, making the motion untimely. During that sentencing hearing, the undersigned noted that Petitioner was a "legal resident" who "may be subject to deportation." Doc. #139, PageID#731. During the same hearing, the undersigned denied counsel's request that his client be able to voluntarily surrender. The Court stated, "I realize that your client has been in this country for many, many years, but *he is not a citizen*, and is still a citizen of another country." *Id.* at PageID##733-74 (emphasis added). At the evidentiary hearing, Petitioner admitted that he recalled the undersigned explaining that this

---

[4] On the date that Petitioner was sentenced, Federal Rule of Appellate Procedure 4(b)(1) required a Notice of Appeal to be filed within ten days. That Rule was subsequently revised, effective December 1, 2009, to extend the time to fourteen days. In calculating that Petitioner's conviction became final on July 31, 2009, Doc. #155, PageID#1095, it appears that the Magistrate Judge mistakenly applied the revised time limit, rather than the one in effect on the sentencing date.

11

was one of the reasons he would not be granted voluntary surrender.  Doc. #143, PageID#824.

Petitioner argues, however, that because this discussion generated no further discussion about possible deportation, it was insufficient to trigger any duty to inquire any further at that time.  He maintains that the "due diligence" clock did not start running until April 23, 2010, when he received a copy of the immigration detainer, and that Magistrate Judge Ovington erred in finding to the contrary.

The Court OVERRULES this Objection to Magistrate Judge Ovington's Report and Recommendations.  The Court agrees that Petitioner was on notice, no later than the July 14, 2009, sentencing hearing, that he was not a United States citizen and was, therefore, subject to possible deportation upon his release from prison.[5]  Despite being told by both his attorney and the Court that he was not a United States citizen, he did nothing to verify his citizenship until he received the immigration detainer nine months later.  Under the circumstances presented here, the Court agrees with Magistrate Judge Ovington that he did not exercise due diligence, and that the Petition was untimely filed.

---

[5] Given the Court's finding that, prior to the plea hearing, Durden told Petitioner that he was not a United States citizen, it could be argued that the "due diligence" clock started running even earlier.  Petitioner knew that if he was not a United States citizen, he was subject to deportation.  In fact, he testified that "back where I was incarcerated somebody told me that I better make sure about my citizenship because if I was to sign the Plea Agreement I could, I will be deported."  This was what caused him to raise the issue with Durden in the first place.  Doc. #143, PageID#784.  Likewise, the undersigned told Petitioner, at the plea hearing, that if he was not a United States citizen, he would be subject to deportation.  Doc. #121, PageID#537.

**III.     Conclusion**

In order to consider Petitioner's Objections to Magistrate Judge Ovington's November 2, 2015, Report and Recommendations, the Court VACATES the November 20, 2015, Decision and Entry adopting said judicial filing (Doc. #156).

Petitioner's Objections to the Report and Recommendations (Doc. #158) are SUSTAINED IN PART and OVERRULED IN PART.  The Court ADOPTS IN PART and REJECTS IN PART the November 2, 2015, Report and Recommendations (Doc. #155).  Although the Court finds that the Magistrate Judge erred in concluding that Petitioner's ineffective assistance of counsel claim lacks merit, the Court agrees that the Motion to Vacate was untimely filed.  Accordingly, the Court SUSTAINS the United States' Motion to Dismiss (Doc. #116), OVERRULES Petitioner's Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 (Doc. #108), and DISMISSES IT WITH PREJUDICE.

Given that the Court's decision herein would not be debatable among reasonable jurists, Petitioner is denied a certificate of appealability.  Given that any appeal from this Court's decision would be *objectively* frivolous, Petitioner is denied leave to appeal *in forma pauperis*.

Judgment will be entered in favor of Respondent and against Petitioner.

The captioned cases are hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: April 18, 2016

WALTER H. RICE
UNITED STATES DISTRICT JUDGE